## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>PHILLIP LITTLE HOOP,<br><br>  Defendant. | 3:19-CR-30121-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS |

Phillip Little Hoop made warned statements to FBI and tribal agents while in jail on a public intoxication charge. He asserts his statements were obtained in violation of *Miranda* and the Fifth Amendment and should be suppressed. The Court disagrees, believing that the statements were lawfully obtained, and recommends that Little Hoop's suppression motion be denied.

### BACKGROUND

At about 4:40 p.m. on August 25, 2019, Rosebud Sioux Tribe Law Enforcement Services (RSTLES) Officer Bailey Denoyer responded to a radio call for assistance at the fairgrounds security tent in Rosebud, South Dakota. There, he spoke with Gwen Left Hand Bull, who started crying. Left Hand Bull reported that she had been looking for her 6-year-old son, W.L.H.B. and found him in a tent with Little Hoop. W.L.H.B.'s pants were down and Little Hoop was sucking on the boy's penis. When Left Hand

Bull inquired what he was doing, Little Hoop said nothing and told her the W.L.H.B. needed to go to the bathroom.  Left Hand Bull asked W.L.H.B. about what she just saw and he informed her that Little Hoop was "bunning" him.

RSTLES Officer Ian Little Shield subsequently found Little Hoop, who had taken off, at another location.  Little Shield could smell a strong odor of an alcoholic beverage on Little Hoop's person and arrested him for public intoxication.

The next day, at approximately 11:00 a.m., FBI Special Agent Kent Brown, and RSTLES Special Agent Frank Iron Heart, Jr. interviewed Little Hoop at the Rosebud Sioux Tribe Adult Correctional Facility in Rosebud.  Brown recorded the interview and made Little Hoop aware of this.  At the outset, Brown advised Little Hoop of his *Miranda* rights, orally and in writing.  Right afterward, Brown, Little Hoop, and Iron Heart engaged in a discourse, that included Brown offering to go over the rights one more time, Little Hoop saying he did nothing wrong and Brown wanting to find the truth but could not go any further without Little Hoop's acknowledgment and waiver of his rights.  Little Hoop did not respond to Brown's last remark.  In fact, no one said anything for 45 seconds.  Iron Heart finally broke the silence, commenting to Little Hoop that it would probably be in his best interest to talk to agents, that if he had a story to tell, now was the time to do so, and that Agent Brown was there to help him. Little Hoop replied that he would "take your word for that" but then disclosed that the first time he met an FBI agent, "they put me away for 14 years."  Reiterating beforehand

that he did not do anything, Little Hoop signed the waiver portion of the advice of rights form and submitted to questioning without a lawyer present.

Little Hoop described being at the fairgrounds the day before and participating in a drum group. He said he was arrested for public intoxication. He maintained that he went to the tent because it was hot out and was sitting in it when Left Hand Bull arrived and asked him to watch W.L.H.B. He explained that he was alone in the tent with W.L.H.B. when Left Hand Bull returned and asked why the boy's clothes were off and became upset. Little Hoop admitted that W.L.H.B.'s pants were undone, but did not know why. Despite being drunk and hungover that day, Little Hoop repeatedly insisted that nothing happened. At the end of the interview, he backed off, tearfully declaring that he was sorry if anything occurred.

Little Hoop was later indicted and charged with aggravated sexual abuse of a child and with committing a felony offense involving a child while required to register as a sex offender. At some point, he moved to suppress his statements claiming they were elicited in violation of his Fifth Amendment right to remain silent and without a valid waiver of his *Miranda* rights. The government responded to the motion, resisting Little Hoop's claims. The Court held an evidentiary hearing at which it heard testimony from Agents Brown and Iron Heart and received 12 exhibits into evidence.

3

## DISCUSSION

### A.  Right to Remain Silent

Little Hoop initially claims that the statements he made to Agents Brown and Iron Heart should be suppressed because he invoked his Fifth Amendment right to remain silent.  The recording indicates that after being *Mirandized*, there was a 45-second quiet pause roughly a minute and a half before Little Hoop signed the waiver section of the advice of rights form.  He argues that his speech abstention, for about three-quarters of a minute, was sufficient to trigger his right to silence and cut off any questioning of him.

In the context of invoking the *Miranda* right to counsel, the United States Supreme Court has held that a suspect must do so "ambiguously."[1]  If the suspect made a statement concerning this right "that is ambiguous or equivocal" then police must end the interrogation or ask questions to clarify whether the suspect wants to invoke his *Miranda* rights.[2]

The Court saw "no principled reason to adopt different standards" for determining when a suspect invokes his right to remain silent.[3]  Both, the Court

---

[1]*Davis v. United States*, 512 U.S. 452, 459 (1994).

[2]*Id*. at 459, 461-62.

[3]*Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *see also Solem v. Stumes*, 465 U.S. 638, 648 (1984) ("[M]uch of the logic language of [*Michigan v. Mosley*, 423 U.S. 96 (1975)]" which discussed the *Miranda* right to remain silent "could be applied to the invocation of the [*Miranda* right to counsel].")

observed, "protect the privilege against compulsory self-incrimination[4] by requiring an interrogation to cease when either right is invoked."[5]  A suspect who wants to invoke his right to remain silent and end an interview, must therefore "do so unambiguously."[6] "Treating an ambiguous or equivocal act[] or statement as an invocation of *Miranda* rights 'might add marginally to *Miranda's* goal of dispelling the compulsion inherent in custodial interrogation.'"[7]  "But 'as *Miranda* holds, full comprehension of the rights to remain silent and to counsel are sufficient to expel or at least neutralize whatever coercion is inherent in the interrogation process.'"[8]

Little Hoop did not say that he wanted to remain silent or that he did not want to talk to agents or answer their questions.[9]  Had he made any of these simple, unequivocal statements, he would have invoked his right to shut down all questioning.

---

[4]*See Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966).

[5]*Berghuis*, 560 U.S. at 381; *see Mosley*, 423 U.S. at 103-04; *Fare v. Michael C.*, 442 U.S. 707, 719 (1979).

[6]*Berghuis*, 560 U.S. at 381; *see also United States v. Ferre-Montoya*, 483 F.3d 566, 569 (8th Cir. 2007) ("A suspect invokes his right to remain silent by making 'a clear, consistent expression of the desire to remain silent.'  Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right are not enough to invoke it for purposes of *Miranda*."); *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001) ("Being evasive and reluctant to talk is different from invoking one's right to remain silent.").

[7]*Berghuis*, 560 U.S. at 382 (*quoting Moran v. Burbine*, 475 U.S. 412, 425 (1986)).

[8]*Berghuis*, 560 U.S. at 382 (*quoting Burbine*, 475 U.S. at 427); *see also Davis*, 512 U.S. at 460.

[9]*See* Mot. Hrg. Exs. 10, 11 (Nov. 12, 2020).

Because he did neither, there is no invocation of his right to silence and no "critical safeguard" for Agents Brown and Iron Heart to "scrupulously honor."[10]

Little Hoop's silence, prior to the execution of the *Miranda* waiver, was not an invocation of his privilege to remain silent. The Supreme Court addressed a similar argument, concluding that an accused's silence during the first 2 hours and 45 minutes of a 3-hour interrogation was insufficient to invoke the privilege because the accused never said he wanted to remain silent or that he did not want to talk to police.[11] Little Hoop likewise made no statements that invoked his Fifth Amendment right and desire to terminate the interview.

**B. Waiver**

Little Hoop next claims that his *Miranda* waiver was invalid. He contends that he was in alcohol withdrawal and prevailed upon with an implied promise.

It is undisputed that Agent Brown advised Little Hoop of his *Miranda* rights before any questioning took place and that Little Hoop waived these rights in writing.[12] The real issue is whether the waiver was binding; or stated another way, whether it was a knowing, voluntary, and intelligent one.[13]

---

[10]*See Berghuis*, 560 U.S. at 381-82; *Davis*, 512 U.S. at 459, 461-62.

[11]*Berghuis*, 560 U.S. at 375-76, 381-82.

[12]*See* Mot. Hrg. Tr. 15-18 (Nov. 12, 2020); Mot. Hrg. Exs. 4, 10, 11.

[13]*See Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005).

The *Miranda* waiver inquiry has "two dimensions":  The waiver must have been (1) "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and (2) made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[14]  The totality of the circumstances are to be considered when determining whether a suspect's waiver is invalid.[15]

The record irrefutably shows that Little Hoop waived his *Miranda* rights.  He understood his rights and chose not to assert or rely on any of them when he spoke to Agents Brown and Iron Heart.

Credible evidence proves that Little Hoop was mindful of his rights and knew what he was doing.[16]  Agent Brown read each of them to Little Hoop from an advice of rights form.[17]  Little Hoop then signed the form, acknowledging that he read and understood his rights and was willing to speak to agents without a lawyer present.[18]

---

[14]*Berghuis*, 560 U.S. at 382-83 (*quoting Burbine*, 475 U.S. at 421).

[15]*See Burbine*, 475 U.S. at 421.

[16]*See Berghuis*, 560 U.S. at 385-86; *Burbine*, 475 U.S. at 421.

[17]*See* Mot. Hrg. Tr. 15; Mot. Hrg. Exs. 10, 11.

[18]*See* Mot. Hrg. Tr. 16-18; Mot. Hrg. Exs. 4, 10, 11.

And Little Hoop affirmed being *Mirandized* before and brought up the 14-year prison sentence he received after he met an FBI agent many years ago.[19]

Little Hoop's written waiver is a telling manifestation that he understood his rights and was disposed to give them up.[20]  His willingness to engage in a 91-minute colloquy without the benefit of counsel and to make statements was a "course of conduct indicating waiver" of his rights.[21]  If Little Hoop wanted to remain silent, confer with or have counsel present, or stop answering questions, he could have said so and ended the interrogation.   That he chose not to and elected to participate – by himself – in a sustained dialogue with Agents Brown and Iron Heart is corroboration of a full-fledged waiver.[22]

What's more, there is no evidence that Little Hoop's statements were coerced.[23] At no time did Agents Brown or Iron Heart threaten or intimidate Little Hoop or yell, raise their voices, or become hostile toward him.  Nor did they use any force, employ punishment, brandish their weapons, or use rubber hose tactics to get Little Hoop to

---

[19]*See* Mot. Hrg. Tr. 24; Mot. Hrg. Exs. 10, 11.

[20]*See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("An express written . . . statement of waiver of the right to remain silent or the right to counsel is usually strong proof of validity of that waiver.")

[21]*Berghuis*, 560 U.S. at 386.

[22]*See id*.

[23]*See id*. (*citing Burbine*, 475 U.S. at 421); *Colorado v Connelly*, 479 U.S. 157, 163-67, 170 (1986).

confess. Little Hoop's age (27), education (high school graduate), familiarity with the criminal justice system (three federal felony convictions and five supervised release revocations),[24] and conduct that day did not intimate that he was low functioning or particularly suggestible and vulnerable to inquiries by authority figures (as evidenced by him denying, again and again, that he did anything to W.L.H.B.).[25] His responses to the *Miranda* advisement and statements and actions following it also establish that he was not suffering from any mental afflictions or having any difficulty grasping questions put to him and that he comprehended his predicament.[26] And he cooperated with agents, drawing them a diagram, providing them with buccal swabs, and answering more than 80 minutes worth of questions.[27]

Little Hoop posits that his alcohol withdrawal symptoms, he had been experiencing the day before, may have affected his ability to waive his *Miranda* rights with a "full awareness"[28] of what he was doing. "Alcohol use is a factor in determining whether a *Miranda* waiver was valid."[29] Intoxication, however, does not automatically

---

[24]*See* Dkt. Nos. 8, 13; Mot. Hrg. Exs. 7-9.

[25]*See* Mot. Hrg. Exs. 10-11.

[26]*See id*.

[27]*See id*.; Mot. Hrg. Exs. 5, 6, 10, 11.

[28]*See Burbine*, 475 U.S. at 421.

[29]*United States v. Allman*, CR. 12-30056-RAL, 2012 WL 3190780 at *5 (D.S.D. Aug. 3, 2012).

nullify a confession.[30]  The test is whether a suspect's alcohol consumption "caused [his] will to be overborne."[31]  It is enough that the suspect was awake and coherent at the time of the *Miranda* waiver.[32]

Any residual alcohol Little Hoop may have had in his system when he consented to questioning and made statements, did not cause his will to be overborne or undermine his ability to make unconstrained choices.[33]  He did not act confused or disoriented before or after his waiver.[34]  He appeared to understand his rights and facilely spoke with Agents Brown and Iron Heart.[35]  Little Hoop exhibited no indicia of intoxication (slurred speech, disorientation, or incoherence) or of alcohol withdrawal (shakes, jitters, or distress) and seemed relaxed and comfortable.[36]  And he was scrupulous enough to profess that nothing happened, but if something did, he was drunk and could not remember.[37]  In the final assay, Little Hoop was conscious of the

---

[30]*See United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008); *United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976).

[31]*Gaddy*, 532 F.3d at 788 (*quoting United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)).

[32]*Id*.

[33]*See* Mot. Hrg. Tr. 13, 18-20, 40, 44; Mot. Hrg. Ex. 11.

[34]*See* Mot. Hrg. Exs. 10-11.

[35]*See id*.

[36]Mot. Hrg. Tr. 23, 34, 40, 44-45; Mot. Hrg. Ex. 11.

[37]*See* Mot. Hrg. Exs. 10, 11.

dilemma before him and his alcohol intake 18 hours or more earlier, did not affect, much less negate, the efficacy of his waiver.[38]

Undeterred, Little Hoop maintains Agent Iron Heart's statements, that Agent Brown was "here to help," was an implied promise of leniency that convinced Little Hoop to break silence and waive his rights.  But the statements were not a promise – either express or implied.  Exhortations that it would be in a suspect's "best interest" to tell the truth and would "benefit" or be better for him, or that if cooperated, he could "get off pretty easy," are not promises, much less ones that are "false or unfulfillable."[39] Iron Heart's statements about Brown being there "to help" were not a promise or an impermissible hope of benefit, but "encouragement" to tell the truth.[40]

---

[38]*See United States v. Daniels*, 775 F.3d 1001, 1005 (8th Cir. 2014); *United States v. Havlik*, 710 F.3d 818, 822-23 (8th Cir. 2013); *Gaddy*, 532 F.3d at 788; *United States v. Bordeaux*, 980 F.2d 534, 538 (8th Cir. 1992); *Casal*, 915 F.2d at 1229; *Brown*, 535 F.2d at 427; *see also Allman*, 2012 WL 319780 at *5 (the defendant had "full awareness" of his *Miranda* rights and the consequences of his decision to abandon his rights, despite his level of alcohol and intoxication).

[39]*Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001); *United States v. Pierce*, 152 F.3d 808, 810-13 (8th Cir. 1998); *Bolder v. Armontrout*, 921 F.2d 1359, 1366 (8th Cir. 1990).

[40]*United States v. Cruse*, 59 Fed. Appx. 72, 74-75, 78 (6th Cir. 2003); *Linares v. Yates*, CV 11-3310 AG(JC), (C.D. Cal. April 30, 2015); *State v. Lewis*, 256 So.3d 510, 520-21 (La. Ct. App. 2018); *State v. Pyles*, 166 N.H. 166, 171 A.3d 1228, 1232 (2014); *Wilson v. State*, 285 Ga. 224, 227-28, 675 S.E.2d 11, 16 (2009); *Phillips v. State*, 2-02-452-CR, 2004 WL 362253 at *7 (Tex. Ct. App. Feb. 26, 2004).

Even if Agent Iron Heart's statements amounted to a promise that impelled Little Hoop to talk, they did not render Little Hoop's waiver involuntary.[41]   Although a promise is a relevant consideration in determining voluntariness, it is only one circumstance to be considered.[42]   Agents routinely employ a variety of tactics to evoke confessions from a suspect, including making promises – even fictitious ones – playing on emotions, using respect for family, deceiving the suspect, and disbelieving his explanations.[43]   None of these tactics, however, render a confession involuntary unless "the overall impact of the interrogation caused [the suspect's] will to be overborne.[44]

_____

[41]*See United States v. Lincoln*, 19-CR-6047 CJS, 2019 WL 7198227 AT *13 (W.D.N.Y. Dec. 23, 2019), *R&R adopted*, 2020 WL 3286472 at *2 (W.D.N.Y. June 18, 2020); *United States v. Garza-Martinez*, 5:16-CR-1100-2, 2016 WL 8193688 at **3-5 (S.D. Tex. Dec. 14, 2016), *R&R adopted*, 2017 WL 464435 at *1 (S.D. Tex. Feb. 12, 2017); *State v. Martin*, A11-1596, 2012 WL 4052364 at *4 (Minn. Ct. App. Sept. 17, 2012).

[42]*See United States v. Larry*, 126 F.3d 1077, 1078-79 (8th Cir. 1997); *see also United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (even if the suspect had been promised some form of leniency, this circumstance alone would not render his confession involuntary).

[43]*See United States v. Sanchez*, 614 F.3d 876, 884 (8th Cir. 2010); *United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *United States v. Astello*, 241 F.3d 965, 967-68 (8th Cir. 2001); *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993).

[44]*United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011); *United States v. Martin*, 369 F.3d 1046, 1055 (8th Cir. 2004); *United States v. LeBrun*, 363 F.3d 715, 725-26 (8th Cir. 2004) (*en banc*); *see also United States v. Larrabee*, 3:16-CR-30039-RAL, 2016 WL 4987122 at *4 (D.S.D. Sept. 14, 2016) (no evidence that agent's implied promises of leniency were the reason that defendant decided to confess to the alleged sexual contact, nor is there any indication that the statements, when considered in the totality with the deception tactics used by the agent and the nature of the interview, led to an impairment of defendant's capacity for self-determination).

That did not happen to Little Hoop.  Agent Iron Heart's statements had little or no intrinsic effect on Little Hoop as the recording makes clear.[45]  Little Hoop stood firm that he did nothing inappropriate to W.L.H.B. (such as touching the boy's penis) until the very end of the interview when he broke down, began crying, and said if anything did happen, he was sorry.[46]

This is not one of those isolated cases in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing agents.  Little Hoop did not say or do anything that conveyed an inability, on his part, to discern and appreciate his rights and the implications of what he was doing.  He knew of the situation he was in and willing to answer questions.  Courts in this Circuit have upheld the validity of waivers under circumstances much more extreme than those in this case.[47]  In any event, even if the suspect has a somewhat

---

[45]*See* Mot. Hrg. Ex. 11.

[46]*See id*.

[47]*See, e.g., Gaddy*, 532 F.3d at 788-89 (finding no error in district court's determination that defendant's waiver of his *Miranda* rights was voluntary because he appeared awake and coherent and did not tell officers he was tired or intoxicated, even though he had not slept the night before and had consumed pain relievers, muscle relaxants, alcohol, marijuana, and cocaine within 24 hours of executing the waiver); *United States v. Contreras*, 372 F.3d 974, 977-78 (8th Cir. 2004) (upholding conclusion that a suspect who used methamphetamine the night before and marijuana the day he waived his rights consented voluntarily because police officers testified that he "appeared sober and in control of his faculties"); *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998) (rejecting defendant's argument that his waiver was not knowing and intelligent because he was impaired by a low IQ, PCP intoxication, and mental illness); *Casal*, 915 F.2d at 1229 (affirming district court's decision that defendant who

(continued. . .)

diminished capacity to resist pressure because of a mental defect, a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion.[48]  No evidence to that effect is present here.

Little Hoop suggests that his waiver was involuntary because he was not initially told he was under investigation for child sexual assault.  The failure, on the part of agents, to inform a suspect of the crime they seek to question him about does not affect the waiver of his Fifth Amendment privilege in a constitutionally significant manner. Such information only bears on the wisdom of the waiver, not its essential knowing and voluntary nature.[49]

## C.  Voluntariness

Any claim that Little Hoop's statements to Agents Brown and Iron Heart were involuntary is likewise unsustainable and provides him with no grounds for relief. "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities had

---

had recently used methamphetamine and had not slept for five days was capable of making a voluntary waiver where police testified they were unaware of these impairments and he did not act intoxicated).

[48]*See United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011); *United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995).

[49]*See Colorado v. Spring*, 479 U.S. 564, 575-77 (1987); *United States v. Anaya*, 715 F. Supp. 2d 916, 936, 959-60 (D.S.D. 2010).

adhered to the dictates of *Miranda* are rare."[50]  While not plainly set forth in his filings, Little Hoop nevertheless insinuates that the inducements agents made, when combined with his hangover (from the heavy drinking he had engaged in days before), rendered his statements involuntary.  The same analysis concerning the voluntariness of a suspect's *Miranda* waiver applies in determining whether the suspect's statements were voluntary under the Fifth Amendment.[51]

The atmosphere of the interview was laid-back and conversational.  Any coaxing, manipulation, or remnants of alcohol impairment Little Hoop may have endured did not transform the interview into a coercive encounter that overbore his will.[52]  What agents said to Little Hoop during the interview (both before and after the *Miranda* waiver) and the alcohol he drank had little or no effect on him.[53]

The audio recording and Agents Brown and Iron Heart's testimony (which the Court found to be credible) show Little Hoop's statements were voluntary.[54]  They were ones he wanted to make and were not the offspring of any coercive environment and

---

[50]*Vinton*, 631 F.3d at 483-84 (alteration in original) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)).

[51]*Connelly*, 479 U.S. at 169-70; *Havlik*, 710 F.3d at 822; *Makes Room For Them*, 49 F.3d at 415; *Brave Hawk*, 2016 WL 311263 at *4.

[52]*See Larrabee*, 2016 WL 4987122 at *4; *Brave Hawk*, 2016 WL 311263 at *4; *United States v. Stoneman*, CR. 09-30101-RAL, 2010 WL 1610065 at **4-5 (D.S.D. April 20, 2010).

[53]*See Daniels*, 775 F.3d at 1005.

[54]*See* Mot. Hrg. Ex. 11.

questioning that overwhelmed his faculties and paralyzed his ability to fend off the urge to confess.  This being the case, the statements may be used against him as substantive evidence at trial.

## CONCLUSION

Little Hoop was advised of all his *Miranda* rights, knowingly, voluntarily, and intelligently waived these rights without ever invoking them, and made unconstrained statements to Agents Brown and Iron Heart.  He never requested a break or made any attempt to stop the hour and-a-half long interview because he was in withdrawal from binge drinking.  Whatever stratagems the agents employed did not sway Little Hoop and make him admit to anything he did not want to.  Because Little Hoop's statements were obtained in compliance with the edicts of *Miranda* and the Fifth Amendment, they are freely admissible as trial evidence.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth in this report, and the record now before the Court, it is hereby

RECOMMENDED that Little Hoop's Motion to Suppress Statements[55] should be denied.

---

[55] *See* Dkt. No. 51.

16

### NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[56] Unless an extension of time for cause is later obtained,[57] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[58]  Objections must "identify[] those issues on which further review is desired[.]"[59]

Dated this 18th day of November, 2020, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[56]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[57]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[58]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[59]*Arn*, 474 U.S. at 155.

17