UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:19-CR-30121-RAL |
|---|---|
| Plaintiff, | |
| vs. | **OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS** |
| PHILLIP LITTLE HOOP, | |
| Defendant. | |

A federal grand jury indicted Phillip Little Hoop (Little Hoop) for one count of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2) and one count of felony offense against a minor while required to register as a sex offender in violation of 18 U.S.C. § 2260A. Doc. 60. Little Hoop moved to suppress from use at trial statements he made in a post-arrest interview, arguing that law enforcement violated Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth Amendment. Doc. 51. Magistrate Judge Mark A. Moreno held a suppression hearing during which he received 12 exhibits into evidence and heard testimony from the interviewing officers, FBI Special Agent Kent Brown and Rosebud Sioux Tribe Law Enforcement Services (RSTLES) Special Agent Frank Iron Heart, Jr. Docs. 62, 63. Thereafter, Judge Moreno issued a Report and Recommendation recommending that the motion to suppress be denied. Doc. 65. Little Hoop has filed an objection to that Report and Recommendation. Doc. 68.

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination

1

of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the Report and Recommendation to which Little Hoop objects, this Court adopts the Report and Recommendation.

I.  **Facts Relevant to Objection to Report and Recommendation**

On August 25, 2019, RSTLES officers responded to a call for assistance at the powwow grounds located in Rosebud, South Dakota. Ex. 1. Upon arrival, Gwen Left Hand Bull (Left Hand Bull) reported to the officers that she observed Little Hoop sucking on her 6-year-old son's penis inside a security tent at the powwow grounds. Ex. 1; Mot. Hr'g Tr. at 9. After speaking with Left Hand Bull, the officers found Little Hoop, arrested him for public intoxication, and transported him to the Rosebud Sioux Tribe Adult Correctional Facility. Ex. 1. At the time of booking, Little Hoop's blood alcohol content was .250. Mot. Hr'g Tr. at 11. As such, law enforcement concluded he was too intoxicated to be interviewed about the allegations that evening. Mot. Hr'g Tr. at 11.

The next day at approximately 11:00 a.m., Agent Brown and Agent Iron Heart interviewed Little Hoop at the Rosebud Sioux Tribe Adult Correctional Facility. Mot. Hr'g Tr. at 12–13. At the outset, Agent Brown advised Little Hoop of his Miranda rights, both orally and in writing. Ex. 4; Ex. 10 at 1–2; Mot. Hr'g Tr. at 15. Right afterward, Agent Brown, Agent Iron Heart, and Little Hoop engaged in conversation, which included Agent Brown offering to go over Little Hoop's rights one more time, Little Hoop saying he did nothing wrong, and Agent Brown explaining that he wanted to find the truth but could not go any further without Little Hoop's acknowledgment

and waiver of his rights. Ex. 10 at 3; Ex. 11. Little Hoop did not respond to Brown's last remark. Ex. 11; Mot. Hr'g Tr. at 50. In fact, no one said anything for roughly 45 seconds. Ex. 11; Mot. Hr'g Tr. at 50. Agent Iron Heart finally broke the silence, commenting to Little Hoop that it would probably be in his best interest to talk to agents, that if he had a story to tell, now was the time to do so, and that Agent Brown was there to help him. Ex. 10 at 4; Ex. 11; Mot. Hr'g Tr. at 50. Little Hoop replied, "I'ma take your word for that" but then disclosed that the first time he met an FBI agent, "they put me away for 14 years." Ex. 10 at 4; Ex. 11; Mot. Hr'g Tr. at 51. Reiterating beforehand that he did not do anything wrong, Little Hoop signed the waiver portion of the advice of rights form and submitted to questioning without a lawyer present. Ex. 4; Mot. Hr'g Tr. at 16, 51.

During the interview, Agent Brown asked Little Hoop if he had been drinking the day before. Ex. 10 at 15; Ex. 11. Little Hoop confirmed that he had been drinking that day at the powwow. Ex. 10 at 16; Ex. 11. He explained that he was "hanging over" and "shaky" that day, so as a cure of sorts, Little Hoop was drinking watered down vodka. Ex. 10 at 15–16; Ex. 11. When asked to rate his level of intoxication on a scale from one to ten, Little Hoop rated it a three. Ex. 10 at 16; Ex. 11.

Throughout the majority of the interview, Little Hoop maintained that he did nothing inappropriate to the minor boy. Ex. 11. However, at the end of the interview he did break down, tearfully declaring that he was sorry if anything occurred. Ex. 11. The interview ended after Agent Brown had exhausted all of his questions. Ex. 11. At no point did Little Hoop request an attorney or express to the officers that he did not want to speak with them. Ex. 11; Mot. Hr'g Tr. at 23. In total the interview lasted approximately 90 minutes. Ex. 11; Mot. Hr'g Tr. at 23.

**II. Discussion**

### A. Invocation of Right to Remain Silent

First, Little Hoop objects to Judge Moreno's finding that Little Hoop did not adequately invoke his right to remain silent. To protect suspects against the "inherently compelling pressures" of custodial interrogation, the Supreme Court of the United States has held that the accused "must be adequately and effectively apprised of his rights," including the right to remain silent. Miranda, 384 U.S. at 467–68. If the accused invokes his rights, "the exercise of those rights must be fully honored" and "the interrogation must cease." Id. at 467, 474. To effectively invoke the right to remain silent, the accused must do so "unambiguously." Berghuis v. Thompkins, 560 U.S. 370, 381 (2010). As the Eighth Circuit has stated, "[t]o adequately invoke [the right to remain silent] and effectively cut off questioning, a suspect must indicate a clear, consistent expression of a desire to remain silent." United States v. Adams, 820 F.3d 317, 323 (8th Cir. 2016) (cleaned up and citation omitted). On the other hand, an invocation of the right to remain silent that is "ambiguous or equivocal" is no invocation at all. Berghuis, 560 U.S. at 381–82.

The Supreme Court has considered whether merely remaining silent is sufficient to invoke the right. In Berghuis, the defendant was essentially silent for two hours and 45 minutes after he was advised of his rights. 560 U.S. at 376. The defendant argued that his silence constituted an invocation of the right to remain silent. However, the Supreme Court disagreed and even characterized his argument as "unpersuasive." Id. at 381. The Supreme Court noted that the defendant could have told law enforcement he wanted to remain silent or that he did not want to speak with them, and either of those "simple, unambiguous statements," would have invoked "the right to cut off questioning." Id. at 382 (cleaned up and citation omitted). However, because the defendant did neither, he did not invoke his right to remain silent. Id.

4

Little Hoop nevertheless contends that he invoked his right to remain silent. Doc. 68 at 3–4. Although Little Hoop never stated that he was invoking his right to remain silent or told the officers he did not want to talk to them, Mot. Hr'g Tr. at 23, Little Hoop emphasizes that he was silent for 45 seconds, claiming that silence itself must be a way to invoke that right, Doc. 68 at 4. However, Little Hoop cites no authority that supports that proposition, and Berghuis makes clear that silence alone is insufficient to invoke unambiguously the right to remain silent. Little Hoop also argues that Agent Iron Heart should have inquired into Little Hoop's silence, but Berghuis foreclosed this argument as well. In Berghuis, the Supreme Court determined that even when a suspect says almost nothing at all for over two hours, law enforcement is neither required to end the interrogation nor ask clarifying questions. 560 U.S. at 381. Despite Little Hoop's 45 seconds of silence, Agent Iron Heart was not required to inquire what Little Hoop's silence meant. In short, Judge Moreno properly found that Little Hoop did not invoke his right to remain silent.

**B. Waiver**

Next, Little Hoop objects to Judge Moreno's finding that Little Hoop waived his right to remain silent. Even if the accused has not invoked his right to remain silent, his statement during a custodial interrogation is nonetheless inadmissible at trial unless "the prosecution can establish that the accused 'in fact knowingly and voluntarily waived *Miranda* rights' when making the statement." Id. at 382 (cleaned up) (quoting North Carolina v. Butler, 441 U.S. 369, 373 (1979)). Thus, whether a defendant waives his Miranda rights involves two inquiries. First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). Second, the waiver must have been "made with a full awareness of both the nature of the right being abandoned and the consequences of the

decision to abandon it." Id. (quoting Moran, 475 U.S. at 421). In sum, a court may conclude that a defendant has waived his Miranda rights "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension." Id. (quoting Moran, 475 U.S. at 421). Examination of the totality of circumstances includes, but is not limited to, such considerations as the "background, experience, and conduct" of the defendant. Id. (cleaned up and citation omitted).

Little Hoop argues that he did not execute a valid waiver of his Miranda rights for two reasons. First, he argues that his waiver was invalid because he was suffering from "alcohol withdrawal symptoms." Doc. 68 at 4–5. While "[a]lcohol use is a factor in determining whether a Miranda waiver was valid," United States v. Allman, No. CR 12-30056-RAL, 2012 WL 3190780, at *5 (D.S.D. Aug. 3, 2012), intoxication by itself does not automatically render a statement involuntary, United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008). Rather, the test is whether the defendant's substance use caused the defendant's will to be overborne. Gaddy, 532 F.3d at 788. The Eighth Circuit has found waivers to be valid even when the defendants were under the influence so long as the defendants appeared sober and as though they understood their rights. See United States v. Contreras, 372 F.3d 974, 977–978 (8th Cir. 2004) (upholding the district court's finding of waiver when defendant had used methamphetamine the evening prior and marijuana the day of); United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990) (upholding the district court's finding of waiver where defendant had not slept for five days and was under the influence of methamphetamine).

Here, Little Hoop had consumed alcohol the day before the interview; however, he was not under the influence at the time of the interview. Mot. Hr'g Tr. at 13, 18–19. Indeed, law enforcement had arrested Little Hoop the prior evening and chose not to interrogate him then due

to his intoxication. Mot. Hr'g Tr. at 11–12. Instead, law enforcement held Little Hoop overnight and into the next day, interviewing him approximately 18 hours after he had been brought into custody. Ex. 12; Mot. Hr'g Tr. at 12–13. Further, there was nothing during the interview that would indicate to law enforcement that he was intoxicated or suffering alcohol withdrawal symptoms. Mot. Hr'g Tr. at 13, 23–24, 40, 44–45. On the contrary, Agent Brown testified that it appeared as though Little Hoop was able to speak intelligently with law enforcement and answer their questions. Mot. Hr'g Tr. at 13, 40.

Second, Little Hoop contends his statement was involuntary because Agent Iron Heart made Little Hoop a "false promise." Doc. 68 at 3. The Eighth Circuit, however, has noted that the "statement to an accused that telling the truth 'would be better for him' does not constitute an implied or express promise of leniency for the purpose of rendering his confession involuntary." Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001). What is more, even if law enforcement does make an express or implied promise to the accused, it does not necessarily follow that any subsequent statements by the accused are involuntary. Id. ("Although a promise made by law enforcement is a relevant consideration in assessing police conduct, it is only one circumstance to be considered and does not render a confession involuntary per se."). Indeed, "[n]umerous cases have held that questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." United States v. Sanchez, 614 F.3d 876, 884 (8th Cir. 2010) (citation omitted).

Here, before Little Hoop signed the advice of rights form, Agent Iron Heart told Little Hoop that Agent Brown was there to help him, to which Little Hoop responded, "I'ma take your word for that." Mot. Hr'g Tr. at 50–51. Little Hoop characterizes Agent Iron Heart's statement as

7

a "false promise" on which he relied in waiving his Miranda rights. He contends that this promise, coupled with Little Hoop's substance use, caused Little Hoop's will to be overborne such that his waiver of rights was involuntary. But regardless of whether this Court construes Agent Iron Heart's statement as a promise, as Judge Moreno aptly pointed out, Doc. 65 at 13, Agent Iron Heart's statement had little effect on Little Hoop, who maintained throughout the interview that he had done nothing inappropriate to the minor boy, Ex. 11.

Moreover, the totality of circumstances, including Little Hoop's background, experience, and conduct, reveal that Little Hoop comprehended his Miranda rights and made the uncoerced decision to waive them. Little Hoop is a 37-year-old high school graduate. Doc. 13. He is no stranger to criminal investigations, one of which resulted in a 14-year federal custody sentence. Exs. 7, 8, 9; Mot. Hr'g Tr. at 24–26, 52. Little Hoop confirmed that he knew of his Miranda rights before his interaction with Agent Brown and Agent Iron Heart. Ex. 10 at 1; Mot. Hr'g Tr. at 15, 24. After Agent Brown explained Little Hoop's rights in both writing and orally, Little Hoop waived his rights in writing and spoke with law enforcement until Agent Brown exhausted all of his questions, totaling roughly 91 minutes. Exs. 3, 4. Agent Brown described Little Hoop as "calm" and "relaxed" during the interview, and Judge Moreno found both officers credible. Mot. Hr'g Tr. at 24, 40; Doc. 65 at 7. Altogether, Little Hoop's background, experience, and conduct suggest that his rights were waived voluntarily. For these reasons as well as others included in the Report and Recommendation, Judge Moreno properly found that Little Hoop waived his Miranda rights.

### C. Voluntariness

Finally, Little Hoop objects to Judge Moreno's finding that his statements were voluntary. The considerations for determining whether a statement is voluntary are much the same as the considerations for determining whether a waiver is valid. A statement is made voluntarily when it

8

is "the product of a rational intellect and a free will." <u>Mincey v. Arizona</u>, 437 U.S. 385, 398 (1978) (cleaned up and citation omitted). On the other hand, a "statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." <u>United States v. Boslau</u>, 632 F.3d 422, 428 (8th Cir. 2011) (quoting <u>United States v. LeBrun</u>, 363 F.3d 715, 724 (8th Cir. 2004) (en banc)). To determine whether a statement is voluntary, courts must consider the "totality of circumstances" including the "conduct of the officers and the characteristics of the accused." <u>Wilson v. Lawrence Cnty.</u>, 260 F.3d 946, 952 (8th Cir. 2001). For example, the Eighth Circuit has considered "among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." <u>Sheets v. Butera</u>, 389 F.3d 772, 779 (8th Cir. 2004).

Little Hoop contends that his statements were made involuntarily for the same reasons he argues that his waiver of <u>Miranda</u> rights was invalid. Doc. 68 at 3, 5. Once again, he argues that alcohol withdrawal and Agent Iron Heart's actions rendered his statements involuntary. This Court disagrees and concludes that Little Hoop's statements were made voluntarily for the same reasons that this Court concluded his waiver was valid. Additionally, neither Agent Brown nor Agent Iron Heart engaged in coercion; they did not raise their voices at Little Hoop, intimidate or threaten Little Hoop, or brandish their weapons. Ex. 11; Mot. Hr'g Tr. at 13. Little Hoop's will was not overborne nor were his statements coerced by Agent Brown or Agent Iron Heart. Little Hoop's objections to Judge Moreno's Report and Recommendation are overruled.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Little Hoop's Objection to the Report and Recommendation, Doc. 68, is overruled. It is further

ORDERED that the Report and Recommendation For Disposition of Motion to Suppress Statements, Doc. 65, is adopted. It is further

ORDERED that Little Hoop's Motion to Suppress, Doc. 51, is denied.

DATED this 11th day of December, 2020.

BY THE COURT:

*(signature)*
ROBERTO A. LANGE
CHIEF JUDGE